**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

SABRINA SINGH,

        **Plaintiff,**                             **CASE NO.:**

    v.

MONOGRAM HEALTH, INC.

        **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SABRINA SINGH, ("Ms. Singh" or "Plaintiff") files this Complaint against Defendant, MONOGRAM HEALTH, INC. ("Monogram Health" or "Defendant), and alleges as follows:

## PRELIMINARY STATEMENT

1. Monogram Health is a leading multispecialty provider of in-home, evidence-based care for the most complex of patients who have multiple chronic conditions.

2. Monogram Health contracts with large insurance companies to provide services to patients enrolled in its insurance plans.

3. Insurance companies then pay Monogram Health based on the number of patients enrolled in services along with a cost saving model.

4. To drive patient enrollment, Monogram Health has engaged in a series of deceptive, unconscionable, and unfair trade practices, including persistent efforts to enroll or re-enroll patients who have declined services.

5. Among these efforts are hospitalization visits to enroll new members.

6.      Specifically, Monogram Health receives information from insurance companies about patients who have been recently hospitalized and direct clinicians to visit those patients in the hospital.

7.      To gain access to these vulnerable hospital patients, Monogram Health directs the visiting clinician to not wear any clothing indicating their affiliation with Monogram Health and to lie to the hospital reception desk about their affiliation and purpose of the visit.

**Dress for the visit:**
- No Monogram badge or other Monogram-branded attire
- No scrubs or lab coats
- Business casual

## Inpatient Visitation Process: Arrival to the Facility

**Key notes:**

- Identify yourself at the reception desk of the facility...

- You should not ask what room number they're in – you should have already gathered this information from your MAC, on the phone with the facility or via the Care Event

- Unless asked directly, you should not say that you are an employee of Monogram Health

- If you are questioned you can say something along the lines of...

- If you meet resistance, walk away and do not escalate the situation

"Hi – my name is [NAME] and I'm a Care Manager with [PATIENT'S HEALTH PLAN]. I'm here to check-in on [Mr. / Ms. PATIENT NAME]. I want to see how they are feeling and ensure they have a plan to get home safely."

"I work with Dr. [MPEs NAME] on behalf of [PATIENT'S HEALTH PLAN]. I came to check on how the patient is feeling and let them know our team will be there to help with any needs when they are discharged."

8.      After gaining access under false pretenses, the clinicians visit the hospitalized patient to persuade the patient to enroll and schedule a discharge visit.

9.      Monogram Health then collects a fee for enrolling the patient, and after discharge, often provides repetitive or unnecessary medical services that are billed to Medicare.

2

10.     Ms. Singh, a Market Manager for the South Florida territory, vocalized her opposition to the unfair, unconscionable, and deceptive hospital visitation practices during a weekly call where hospital visits were being emphasized.

11.     Ms. Singh was fired the next business day.

12.     Ms. Singh also had recently exercised her rights under the FMLA, which may also have contributed to the decision to terminate her employment.

## JURISDICTION

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA.

14.     This Court has jurisdiction over Plaintiff's related state law claim under the Florida Private Whistleblower Act pursuant to 28 U.S.C. § 1332 since Plaintiff is a citizen of Florida (Broward County) and Defendant is a citizen of Delaware (incorporated) and Tennessee (principal place of business), and the amount in controversy is in excess of $75,000.  Alternatively, this Court has supplemental jurisdiction over Plaintiff's related state law claim pursuant to 28 U.S.C. § 1367 since that claim is so related to her FMLA claim that they form part of the same case or controversy.

15.     Venue is proper in Southern District of Florida this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## PARTIES

16.     Plaintiff Sabrina Singh is a former Market Manager for Defendant Monogram Health, Inc.  At all relevant times herein, Ms. Singh met the definition of an "employee" and/or

"eligible employee" under applicable statutes since she worked at least 1,250 hours in the 12 months prior to her leave request and worked in a location that employed 50 or more employees within a 75-mile radius.

17.     Defendant Monogram Health, Inc. is a corporation incorporated in Delaware with its principal place of business located in Tennessee. At all times relevant herein, Monogram Health met the definition of an "employer" and/or "covered employer" under all applicable statutes.

## STATEMENT OF FACTS

18.     In May 2024, Ms. Singh became employed with Monogram Health as a Market Manager.

19.     As a Market Manager, Ms. Singh was responsible for driving performance in the South Florida Territory and led a team of nurse practitioners, registered nurses, social workers, and support team members.

20.     This included overseeing the efforts to enroll new patients within the territory.

21.     In June 2025, Ms. Singh had a PowerPoint training on the Inpatient Visitation Process.

22.     The training explained that when an "unenrolled patient is admitted to the hospital, they are in a critical time of need" and "[a]dmitted patients are often in a vulnerable state faced with difficult decisions…"

23.     The training explained the process whereby the Market Administrator Coordinator ("MAC") would receive a "nightly report on attributed hospital admissions" for unenrolled and non-opt-patients, and the MAC would confirm admission, obtain hospital room

4

numbers, and then send clinicians' assignments with patient, facility and room number.

24.     For enrolled patients, "assignments will generally be deprioritized against new patients."

25.     When visiting the hospital, clinicians were instructed to avoid wearing any clothing that would associate them with Monogram Health:

**Dress for the visit:**
- No Monogram badge or other Monogram-branded attire
- No scrubs or lab coats
- Business casual

26.     Clinicians were also told to lie to the Hospital reception desk about who they were with and purpose of the visit:



27.     After obtaining admission under these false pretenses, the clinicians would visit the hospitalized patients and proceed to get the patients to agree to Monogram's services and schedule a post-discharge visit.

28. As Monogram Health is paid a fixed monthly fee for every enrolled patient that they manage, Monogram Health has an incentive to sign up as many patients as possible.

29. Notably, many of the patients being visited in the hospital had previously declined Monogram Health's services.

30. On or around July 2, 2025, Ms. Singh requested FMLA leave for her own serious health condition.

31. On July 16, 2025, Monogram Health announced that it had expanded its partnership with Aetna, a CVS Company, to expand to the Florida market to include its nearly 13,000 patients under its Aetna Medicare Advantage plan.

32. From July 30, 2025 to August 11, 2025, Ms. Singh was out of work on an approved FMLA leave.

33. On August 12, 2025, Mr. Singh returned to work.

34. Upon her return to work, Dr. Sadia Anees Ali ("Dr. Ali"), Regional Physician Executive, had a Zoom meeting with Ms. Singh where she asked Ms. Singh about the reason for her leave, and if she had any follow up appointments or planned to take another medical leave.

35. Without disclosing the reason for the FMLA leave, Ms. Singh responded that she did have follow-up appointments and there was the possibility of needing additional time off if she did not heal well.

36. Dr. Ali then disclosed that the company had placed Hailey Fox in her position because she did not think she was returning to work.

37. However, Ms. Singh was permitted to resume her position, which left Ms. Fox without a permanent position.

6

38.    On October 17, 2025, Dr. Ali sent a message reiterating the training for inpatient visits, including:

- "Attire: professional (no MH logo scrubs or white coat)"

- "**At the hospital:** Introduce yourself Name, mention your [sic] representing (Aetna/Cigna etc) and here to see Mr.Ms xys in room xyz."

- "Don't bring up MH/MH ID card as the hospital might now know"

39.    On Friday, October 31, 2025, Ms. Singh attended a weekly meeting held by Dr. Ali.

40.    During the meeting, Dr. Ali was pushing the need to increase hospital visitations.

41.    Ms. Singh voiced her concern about clinicians being instructed to falsely identify themselves to gain access to vulnerable patients recently admitted to the hospital, that she opposed this practice and believed it was unlawful.

42.    Dr. Ali dismissed Ms. Singh's objections and reiterated the need to continue to gain new business through these hospital visitations.

43.    On Monday, November 3, 2025, Ms. Singh was terminated.

44.    Ms. Singh was told that her position was no longer needed.

45.    However, the day after her termination, it was announced that Ms. Fox was taking over Ms. Singh's position.

46.    Upon information and belief, obtaining access to a hospital patient under false pretenses to generate new business constitutes a deceptive, unconscionable and/or unfair practice under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").[1]

---

[1]  By way of example, the FDUTPA provides in §501.203(3)(c) that a violation may be based

7

47.     Monogram Health may have also violated other laws, including the False Claim Act to the extent that it billed Medicare for repetitive or unnecessary medical treatment, and the Health Insurance Portability and Accountability Act to the extent Monogram Health clinicians gained access to patient health records without authorization.

### FIRST CAUSE OF ACTION
**(Retaliation in Violation of the FMLA)**
*Against Defendant*

48.     Plaintiff repeats, reiterates, and re-alleges each and every allegation in the preceding factual allegations at 18-47, as though fully set forth herein.

49.     By the actions described above, Defendant violated the FMLA when it terminated Ms. Singh's employment in retaliation for her exercising her rights under the FMLA.

50.     As a direct and proximate result of Defendant's unlawful retaliation in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other equitable relief that the Court deems just and proper.

### SECOND CAUSE OF ACTION
**(Retaliation in Violation of the FPWA)**
*Against Defendant*

51.     Plaintiff repeats, reiterates, and re-alleges each and every allegation in the preceding factual allegations at 18-47, as though fully set forth herein.

---

upon "any statute, rule [or] regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 456.072 makes it grounds for discipline for health practitioners to (1) "[make] misleading, deceptive or fraudulent representations in or related to the practice of licensee's profession"; (2) "[make] deceptive, untrue, or fraudulent representations in or related to the practice of a profession or employing a trick or scheme in or related to the practice of a profession" or (3) "[e]xercising influence on the patient or client for the purpose of financial gain of the licensee or a third party." *See also* Florida Administrative Code (FAC) 64B9-8.006.

52.     By the actions described above, Defendant violated the FPWA when it terminated Plaintiff's employment after she objected to, or refused to participate in, an activity, policy or practice of Defendant which is in violation of a law, rule or regulation.

53.     As direct and proximate result of Defendants' unlawful conduct in violation of the FPWA, Plaintiff has suffered, and continues to suffer lost wages and benefits, and emotional distress, for which she is entitled to an award of monetary damages.

54.     Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enters judgment in her favor and against Defendant, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B.     An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, an award of back pay and loss of benefits through the date of trial and front pay and future loss of benefits if the equitable remedies of employment, reinstatement and promotion are not feasible;

C.     An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all compensatory damages, including, but not limited to, an award of emotional distress caused by Defendants' unlawful conduct;

D.     An award of liquidated damages in an amount to be determined at trial;

9

E.   Prejudgment interest on all amounts due;

F.   An award of Plaintiff's reasonable attorneys' fees and costs; and,

G.   Such other and further relief as the Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: June 9, 2026

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

By: _____
Bryan Arbeit, Bar No. 1010329

8151 Peters Rd, 4th Fl.
Plantation, FL 33324
Tel: (954) 694-9610
barbeit@forthepeople.com

Jeremy Stephens, Esq.
*Pro Hac Forthcoming*
191 Peachtree Street,
N.E., Ste. 4200
Atlanta, Georgia 30343-1007
Tel: (404) 965-1682
jstephens@forthepeople.com

*Attorneys for Plaintiff*

10